IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **AFGHAN GROWTH FINANCE LLC**,<br><br>    Plaintiff,<br><br>v.<br><br>**ABDUL GHAFOOR, et al**.<br><br>    Defendants. | Case No.: 1:14-cv-669<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CONFIRM, RECOGNIZE, AND ENFORCE
ARBITRATION AWARD**

Defendants, Abdul Ghafoor, Shafi Ghafoor, and Farhad Ghafoor ("Defendants" or

"Respondents"), by counsel, submit this Memorandum in Opposition to Plaintiff's Motion to

Confirm, Recognize, and Enforce Arbitration Award (the "Motion").  Defendants request that

the Court deny Plaintiff's motion or, in the alternative, maintain the existing stay through

October 15, 2020, which is "three months after the award is filed or delivered" and the deadline

set by 9 U.S.C. § 12 for Defendants to serve on Plaintiff a motion to vacate the award.

**I.      INTRODUCTION**

Plaintiff brings its motion under Section 207 of the Federal Arbitration Act ("FAA"),

9 U.S.C. § 207 and Article III of the United Nations Convention for the Recognition and

Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention").  *See* 21

U.S.T. 2517, 330 U.N.T.S. 38.  (*See* ECF No. 88, at pp. 1-2).  However, Article V(1) of the New

York Convention provides that "[r]ecognition and enforcement of the award may be refused, at

the request of the party against whom it is invoked, only if that party furnishes to the competent

97680839_2

authority where recognition and enforcement is sought, proof that:…(b) The party against whom the award is invoked…was otherwise unable to present his case[.]"

As set forth in the Declaration of Eric Montalvo, that is what happened in this case.  On April 2, 2020, in response to the emerging COVID-19 pandemic, the arbitrator suddenly cancelled the oral hearing scheduled for April 13-14, 2020.  In doing so, the arbitrator deprived Respondents of the opportunity to:  (i) cross-examine Claimant's director and sole fact witness, (ii) cross-examine Claimant's expert witness on Afghan law, and (iii) present rebuttal testimony from Defendants' expert witness on Afghan law.  *See* Montalvo Decl. at ¶ 3.  The arbitrator then relied on the unchallenged testimony of Claimant's two witnesses to find against the Defendants in his Award.  *See* Montalvo Decl. at ¶¶ 58-67.

The arbitrator was right to be concerned about holding an in-person hearing in light of the emerging COVID-19 pandemic; however, his decision to cancel the hearing was too severe.  Video conferencing technology was available even if it was, as the arbitrator described it in his decision cancelling the hearing, "not the preferred option."  Montalvo Decl. Exhibit 22 at ¶ 15; *see also* Montalvo Decl. at ¶¶ 38-42, 68-70.  By choosing not to use that technology, the arbitrator denied Respondents the opportunity to confront the witnesses who testified against them, and whose testimony provided the basis for the arbitrator's decision, thereby depriving Respondents of due process.  *See* Montalvo Decl. at ¶¶ 58-67, 71.

## II.    FACTUAL BACKGROUND

Respondents insisted from the beginning of the arbitration on the need to hold an evidentiary hearing, and the arbitrator provided for one in his first procedural order ("PO1").  *See* Montalvo Decl. at ¶¶ 6-16; Montalvo Decl. Exhibit 3.  PO1 contained several provisions providing for the examination of fact and expert witnesses at that hearing.  *See* Montalvo Decl. at

97680839_2

¶ 15. For example, paragraph 8.10 of PO1 provided that "Each witness who submits a witness statement shall be available for cross-examination during the hearing." Montalvo Decl. Exhibit 3 at ¶ 8.10. Paragraph 8.15 of PO1 also provided for an opportunity for a party to present rebuttal testimony through direct examination of its own witnesses at the hearing in order to respond to facts that arose after that witness submitted his or her witness statement. *See id*. at ¶ 8.15.

Claimants introduced three witness statements into evidence in the arbitration. *See* Montalvo Decl. at ¶ 17. First, Claimant submitted into evidence the Witness Statement of Mr. Mustafa Kazem on December 16, 2020. *See* Montalvo Decl. Exhibit 4. Second, Claimant submitted into evidence the Expert Witness Statement of Mr. Ali Ahmadi that same day. *See id*. Third, Claimant submitted into evidence the Second Expert Witness Statement of Ali Ahmadi on April 1, 2020. *See* Montalvo Decl. Exhibit 21. Mr. Ahmadi's second expert report was signed on March 29, 2020 and submitted into evidence in the arbitration on April 1, 2020. *See* Montalvo Decl. at ¶ 49. Respondents introduced four witness statements into evidence in the arbitration, including an expert report on Afghan law by Ms. Catherine Baylin Duryea. *See* Montalvo Decl. at ¶ 18; Montalvo Decl. Exhibit 5. Both parties' expert witnesses testified about Afghan law because the parties' contract that is the basis for their dispute is governed by Afghan law.

The hearing was initially scheduled for the week of March 23. *See* Montalvo Decl. at ¶ 14. On March 3, 2020, the arbitrator sent an email to the parties concerning hearing preparations. In that email, the arbitrator wrote that "witnesses who have submitted witness statements shall be made available for cross-examination." Montalvo Decl. Exhibit 8. His email also called attention to the deadline of March 13, 2020 for witness notifications. *See id.*

97680839_2

On March 5, 2020, the arbitrator revised the procedural timetable to accommodate a medical emergency suffered by a member of Respondents' counsel team. *See* Montalvo Decl. Exhibit 9. As a result, the deadline for final witness notifications was changed from March 13, 2020 to April 3, 2020. *See id*. The hearing was rescheduled to take place during the "week of 13 April 2020." *Id*. The arbitrator later fixed the exact dates of the hearing as April 13-14, 2020.

On March 20, 2020, counsel for Respondent submitted a preliminary list of witnesses it intended to call at that hearing as well as listing other hearing attendees. *See* Montalvo Decl. Exhibit 14. Respondents included Claimant's fact witness, Mr. Kazem, on that preliminary witness list. *See id*. Respondents also included Ms. Catherine Baylin Duryea, Respondents' expert witness on Afghan law. *See id*. In their preliminary witness list, Respondents also "reserve[d] the right to amend this witness list at a later time," such as when the final witness notifications were due on April 3, 2020. *Id*.

On April 1, 2020, the parties submitted their second round of written submissions to the arbitrator. As noted above, Claimant's submission included a second expert report by Mr. Ahmadi, Claimant's expert witness on Afghan law in which he provided testimony about the applicability of the statute of limitations to Claimant's claim under Afghan law. *See* Montalvo Decl. Exhibit 21. His testimony about the statute of limitations was new. *See* Montalvo Decl. at ¶ 44. He had not addressed that subject in his first expert report. *See id*. at ¶ 49. Therefore, Respondents' counsel intended to have Respondents' Afghan law expert, Ms. Duryea, respond to this new evidence through direct examination at the hearing as specifically provided for in paragraph 8.15 of PO1. *See id*.

On April 2, 2020, the arbitrator issued Procedural Order No. 4 ("PO4") in which he cancelled the hearing. *See* Montalvo Decl. Exhibit 22. The arbitrator wrote in PO4 that, "it is

the Tribunal's view that, unless absolutely necessary for witnesses to be cross-examined, and in the absence of agreement to delay the proceedings, the videoconference option is not the preferred option." *Id*.  The arbitrator explained why he concluded a hearing was unnecessary: "[s]ince Claimant has presented no witness statements in its submissions of 16 December 2019 and 1 April 2020, there are no witnesses that have been presented by Claimant who could be called by Respondents for cross-examination." *Id*.

The arbitrator was evidently unfamiliar with the record in the arbitration when he wrote PO4.  Otherwise, he would have acknowledged in PO4 that Claimant had, in fact, submitted three witness statements from two witnesses and that Respondents had designated one of Claimant's two witnesses, Mr. Kazem, for cross-examination on March 20, 2020.  *See* Montalvo Decl. at ¶ 52.

The arbitrator later acknowledged his oversight.  In footnote nine of the Award, the arbitrator wrote:

> In Procedural Order No. 4, the Tribunal indicated that Claimant had not presented any witnesses for cross examination.  *See* Procedural Order No. 4, para. 18.  The Tribunal makes a correction and adds to the reasoning in Procedural Order No. 4. Claimant submitted the witness statement of Mustafa Kazem as exhibit C-2 and expert witness statements from Mr. Ali Ahmadi, as exhibits C-13 and C-19. **However, this does not change the decision rendered in Procedural Order No. 4 as Respondents provided no indication that they intended to cross-examine these witnesses or provided argument to justify their cross-examination**.  If Respondents had made such a request, the Tribunal would have in any event maintained its order as it would have decided that the most efficient and effective manner to complete the arbitration based on the record before it was to decide the case on the written record and that an oral hearing was unnecessary.

Montalvo Decl. Exhibit 23 at fn. 9 (Emphasis supplied).  Even in the Award, the arbitrator continued to overlook the important procedural steps taken by the Respondents.  As noted above, on March 20, 2020, Respondents designated one of Claimant's witnesses, Mr. Kazem, for cross-examination.  The arbitrator's mistaken criticism of Respondents in footnote nine further

overlooked the fact that Respondents' final witness notifications were not due until April 3, 2020.  In addition, although the award devotes seven pages to a detailed recitation of each of the procedural steps taken in the arbitration (*see* Montalvo Decl. Exhibit 23 at ¶¶ 15-64), the award fails to include among those steps the Respondents' March 20, 2020 submission designating witnesses for the hearing. *See* Montalvo Decl. at ¶ 55.

As a result of the arbitrator's abrupt decision to cancel the hearing, Respondents were deprived of the opportunity to cross-examine Mr. Kazem, whose testimony was relevant both to a disputed factual issue between the parties and to Respondents' statute of limitations and laches defenses as well as a number of other subjects. *See* Montalvo Decl. at ¶¶ 59-60.  The arbitrator relied on Mr. Kazem's witness statement to resolve a factual dispute against Respondents and in favor of Claimant. *See* Montalvo Decl. at ¶ 59; Montalvo Decl. Exhibit 23 at ¶ 133.

Respondents were also deprived of the opportunity to cross-examine Claimant's expert witness on Afghan law, Mr. Ahmadi, whose second expert report contained new evidence about the statute of limitations under Afghan law and was introduced into evidence only on April 1, 2020, exactly one day before the arbitrator cancelled the hearing.  The deadline for final witness notifications was April 3, 2020.  Respondents would have designated him on their final witness list if the arbitrator had not cancelled the hearing. *See* Montalvo Decl. at ¶ 61.  The arbitrator nevertheless relied exclusively upon Mr. Ahmadi's second expert report to rule against Respondents and dismiss their defense based on the statute of limitations. *See* Montalvo Decl. at ¶ 66; Montalvo Decl. Exhibit 23 at ¶¶ 105-107.

Finally, Respondents were deprived of the opportunity to have their own expert witness on Afghan law, Ms. Duryea, testify at the hearing and respond to the contents of Mr. Ahmadi's second expert report. *See* Montalvo Decl. at ¶ 62.

All of these procedures for witness examination were specifically contemplated by

Procedural Order No. 1.  *See* Montalvo Decl. at ¶ 15.  Respondents' counsel relied on their

availability to prepare and present Respondents' case.  *See* Montalvo Decl. at ¶ 16.  This

deprived the Respondents of the opportunity to present their case, in particular their defense that,

under Afghan law, the statute of limitations precluded Claimant's claim in its entirety.

## III.    STANDARD OF REVIEW

A district court may decline to recognize a foreign arbitral award, if "it finds one of the

grounds for refusal or deferral of recognition…specified in the said Convention."  9 U.S.C.

§ 207.  Although there is a strong policy in favor of the enforcement of arbitration awards,

Article V(1)(b) of the New York Convention lists several grounds for this Court to refuse

recognition of an arbitral award, including when a party was "unable to present its case."  The

drafting history of the Convention, to which this Court may refer as an aid in its interpretation,

*see GE Energy Power Conversion France SAS v. Outkumpu Stainless Steel USA, LLC*, No. 18-

048, slip. op. at 8-9 (U.S. Sup. Ct. June 1, 2020) (consulting drafting history of the New York

Convention); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (same), shows that

Article V(1)(b) was expanded to include a provision requiring due process in international

arbitration proceedings in order for those proceedings to produce an enforceable award.  The

original version of Article V(1)(b) required only that the parties receive timely notice of the

arbitration proceedings.[1]  This Court has thus recognized that a party is "unable to present its

---

[1]    *See* "Text of Convention on the Recognition and Enforcement of Foreign Arbitral Awards as Provisionally
Approved by the Drafting Committee on 6 June 1958," U.N. Econ. & Social Council, E/Conf.26/L.61 (June 6,
1958), Art. V(1)(b), http://www.newyorkconvention.org/11165/web/files/document/1/5/15933.pdf ("the party
against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the
arbitration proceedings *in sufficient time to enable him to present his case*" (emphasis added)) This provision
was identical to Article 2(b) of the Geneva Convention on the Execution of Foreign Arbitral Awards, June 10,
1958, 92 U.N.T.S. 301.  Article V(1)(b) was amended to the current version, which requires, in addition to
timely notification, that a party was not "otherwise unable to present [its] case." *See* "United Nations

case" within the meaning of Article V(1)(b) when "the arbitral panel denied the party a

meaningful hearing," and that a panel may deny a party a meaningful hearing in many ways. *See*

*Research and Development Center Teploenergetika*, *LCC v. EP International, LLC et al.*, 182 F.

Supp 3d 556, 565 (E.D. Va 2016) (collecting cases).

## IV.    ARGUMENT

A party is unable to present its case if the arbitrator "denied [Defendants] a meaningful

hearing." *Id.*  A defense under Article V(1)(b) of the New York Convention "corresponds to a

constitutional due process defense."  *Id.* (citing *Generica Ltd. v. Pharmaceutical Basics, Inc.*

*(PBI),* 125 F.3d 1123 (7th Cir. 1997)); *see also Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141,

145 (2d Cir. 1992) (citing *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de*

*L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 975–76 (2d Cir. 1974) ("We have recognized that

the defense provided for an Article V(1)(b) 'essentially sanctions the application of the forum

state's standards of due process,' and that due process rights are 'entitled to full force under the

Convention as defenses to enforcement.'").  "An arbitral award 'should be denied or vacated if

the party challenging the award proves that he was not given a meaningful opportunity to be

heard as our due process jurisprudence defines it." *EP International*, 182 F. Supp 3d at 565

(citations omitted).  This Court has also recognized that "arbitral awards have been vacated on

the basis of due process, under a separate section of the FAA, in circumstances where an arbitral

panel refuses to accept or give weight to crucial, and otherwise acceptable evidence."

*Id.*.(citations omitted).  For that reason, this Court found cases arising in the context of a vacatur

---

Conference on International Commercial Arbitration: Summary Record of the Twenty-Third Meeting," U.N. Econ. & Social Council, E/Conf.26/SR.23 (June 9, 1958), p. 15, http://www.newyorkconvention.org/11165/web/files/document/1/5/15859.pdf.

action under 9 U.S.C. § 10 relevant and applicable in the context of an opposition to a motion to confirm or enforce an award on the basis of Article V(1)(b) of the New York Convention. *Id.*

Arbitral tribunals who prevent a party from cross-examining key witnesses must take steps to ensure that that party is not prejudiced as a result. In *Generica,* the arbitral tribunal prevented PBI from cross-examining a witness, because the testimony could potentially expose the witness and his company to criminal liability. 125 F.3d 1123, 1127 (7th Cir. 1997). Although the Seventh Circuit ultimately enforced the arbitration award, it did so only because the tribunal took two precautions to eliminate any prejudice that would have resulted from a lack of cross-examination: (1) the tribunal allowed PBI to make its argument by other means, specifically by introducing additional expert testimony on direct examination at the hearing, *see id.* 1129-30 & n.4; and (2) the tribunal expressly noted that it "would place diminished reliance on [the witness's] direct testimony, thereby eliminating any possibility of prejudice to PBI," *id.* 1130-31 & n.7; *see also Dastine Grp. Ltd. v. Moonvale Investments Ltd. et al.* 2017 WL 4712179 at *7-8 (N.D. Cal. Oct. 11, 2017) (finding that the claimant had been able to present its case despite having been unable to cross-examine absent witnesses, because the arbitrator had taken steps to ensure the claimant was not prejudiced by the lack of cross-examination, including the fact that the arbitrator had "construed [the individuals'] silence against them," and "took [claimant's] asserted facts as true." *Id.* at *12-*13); *cf. AO Techsnabexport v. Globe Nuclear Services and Supply, Ltd.*, 656 F.Supp.2d 550, 559 (D.Md. 2009) (tribunal's reliance on exhibits that were effectively witness statements whose authors were not subject to cross-examination would have constituted a procedural violation bearing on the enforceability of the award, but the objection had been waived).

In the case at bar, the arbitrator cancelled the hearing and elected instead to decide the case on the record as it stood on April 1, 2020.  As a result of cancelling the hearing, the Respondents were deprived of the opportunity to cross-examine Respondent's two witnesses and to present rebuttal testimony from their own expert witness.  Although the circumstances of the global COVID-19 pandemic justified not gathering in person, there was a readily available alternative to a wholesale cancellation of the hearing.  Namely, the arbitrator could have held a hearing by video conference.  *See* Montalvo Decl. at ¶¶ 38-42, 68-70.  Indeed, the parties and the arbitrator actively discussed that possibility.  *Id*. at ¶¶ 38-42.  However, the arbitrator concluded that, "the videoconference option is not the preferred option" even though it would have allowed cross-examination of the Claimant's witnesses and the presentation of direct testimony from Respondents' expert witness.  *See* Montalvo Decl. Exhibit 22 at ¶ 15.  If the arbitrator did not wish to hold a hearing by video conference, then the arbitrator instead could have allowed Claimant to respond to Claimant's new expert evidence, submitted on April 1, 2020, in writing.  *See* Montalvo Decl. at ¶ 68.  Despite these available alternatives, the arbitrator took no steps to mitigate the prejudice to Respondents that resulted from his cancellation of the hearing.

The arbitrator's approach was in stark contrast to that of the tribunals in *Generica* and *Dastine*, both of which took pains to avoid prejudice to the party affected by the limitations and restrictions they imposed on the examination of witnesses.  In *Generica*, because the tribunal prevented a party from cross-examining a key witness, it <u>allowed</u> that party to elicit additional expert testimony at the hearing so that the party could establish the same facts that it wanted to establish through cross-examination, and the tribunal <u>diminished the weight</u> it gave to the testimony of the witness who was not cross-examined.  125 F.3d at 1129-31 & nn. 4, 7.  By contrast, in this case, the arbitrator's decision <u>prevented</u> Defendants from eliciting additional

expert testimony from Ms. Dureya to address Mr. Ahmadi's statute of limitations arguments, and the arbitrator placed <u>exclusive reliance</u> on Mr. Ahmadi's testimony when he decided that issue in his award. *See* Montalvo Decl. at ¶ 59. Likewise, while in *Dastine* the tribunal made adverse inferences against the fact witnesses who were not subject to cross-examination, 2017 WL 4712179 at *7-8, here the arbitrator fully credited Mr. Kazem's testimony. *See* Montalvo Decl. Exhibit 23 at ¶ 133.

Furthermore, a tribunal cannot offer a conclusory and incorrect justification for its decision to prevent a party from offering material evidence. In *Tempo Shain Corp. v. Bertek*, the Second Circuit vacated an award because the tribunal refused to postpone hearings to allow Bertek's key witness to testify. The tribunal refused to allow the testimony, because it considered that the testimony would duplicate "a number of letters in the file" written by the witness. 120 F.3d 16, 17-19 (2d Cir. 1997). In vacating the award, the Second Circuit noted that the arbitrator's assessment that the testimony would be duplicative of the written record was conclusory because the arbitrator had not "specifically identified" any letter that would contain material duplicative of the expected testimony. The Second Circuit further found that the tribunal's assessment that the testimony would be duplicative was wrong, because the testimony would have pertained to the negotiation of the underlying contract whereas the letters discussed the performance of the contract. *See id.* at 20. The Second Circuit stressed that Bertek was prejudiced by the tribunal's error, because the absence of its witness's testimony left the opposing party's evidence "unrebutted." *Id.*

In the case at bar, as in *Tempo*, the arbitrator's stated justification in Procedural Order No. 4 for cancelling the hearing was based on an incorrect understanding of the factual record of the arbitration that ultimately prejudiced Respondents. The arbitrator cancelled the hearing

because he mistakenly believed that Claimant had no witnesses for Respondents to cross-examine. In his decision cancelling the hearing, the arbitrator mistakenly wrote that, "Claimant has presented no witnesses in its submissions of 16 December 2019 and 1 April 2020, there are no witnesses that have been presented by Claimant who could be called by Respondents for cross-examination." That was wrong. In fact, Claimant had submitted three witness statements from two witnesses as the arbitrator later acknowledged in his award.

After acknowledging in the award that he had made a mistake in his reasoning in Procedural Order No. 4, the arbitrator elected to "make[] a correction and add[] to the reasoning in Procedural Order No. 4." Montalvo Decl. Exhibit 23 at fn 9. The arbitrator explained that the fact that he was not aware of Claimant's three witness statements when he wrote Procedural Order No. 4 "does not change the decision rendered in Procedural Order No. 4 as Respondents provided no indication that they intended to cross-examine these witnesses or provide argument to justify their cross-examination." *Id*. The arbitrator got that wrong too. Respondents had designated witnesses for cross-examination. Montalvo Decl. Exhibit 14. They had done so in response to an order from the arbitrator issued on March 19, 2020. *See* Montalvo Decl. at ¶¶ 29-37. On March 20, 2020, Respondents submitted a preliminary list of witnesses. *See* Montalvo Decl. Exhibit 14. The Claimant used Respondents' list to prepare a proposal for conducting the hearing by video conference that the Claimant submitted to the arbitration on March 24, 2020. *See* Montalvo Decl. at ¶¶ 29, 38. Moreover, the final list of witness designations was not due until April 3, 2020. *See id.* at ¶ 23. The arbitrator cancelled the hearing before Respondents could submit their final list (and include on this list Claimant's expert witness, who had just presented new evidence on a new and potentially dispositive issue of Afghan law on April 1, 2020). *See id.* at ¶¶ 46-57.

The arbitrator offered one final conclusory justification for his decision to cancel the hearing without providing any procedural safeguards to protect the Respondents from the resulting prejudice. *See id.* at ¶ 59. The arbitrator wrote in the last sentence of footnote nine: "If Respondents had made such a request [to examine witnesses], the Tribunal would have in any event maintained its order as it would have decided the most efficient and effective manner to complete the arbitration based on the record before it was to decide the case on the written record and that an oral hearing was unnecessary." Montalvo Decl. Exhibit 23 at fn 9. This after-the-fact rationalization is even more skeletal than the statement criticized by the Second Circuit as inadequate in *Tempo*. Unlike in that case, where the arbitrator stated in general terms that the excluded testimony would be "cumulative," here the arbitrator never explains why an oral hearing was "unnecessary." Nor does he explain how he determined that the record was sufficiently complete as of April 2, 2020 such that he could decide the case on the record as it existed as of that date without allowing for the procedures for witness examination specifically negotiated at the outset of the arbitration in Procedural Order No. 1. Nor did he comply with the requirement in paragraph 8.20 of Procedural Order No. 1. That provision allowed the arbitrator to "refuse the right of a Party to examine a witness" but only "when, after duly hearing the requesting Party, [the arbitrator] considers that the factual allegations on which the witness [to be heard] are sufficiently proven by exhibits or other witnesses, or that the particular witness testimony as such is irrelevant." Montalvo Decl. Exhibit 3 at ¶ 8.20. The arbitrator made no such determination with respect to either of Claimant's two witnesses.

In fact, an oral hearing was necessary, and the arbitrator's decision not to hold one prejudiced Defendants. *See* Montalvo Decl. at ¶¶ 58-67. First, cancelling the hearing deprived Respondents of the opportunity to cross-examine Claimant's sole fact witness. *See id.* at ¶ 59.

14

As Mr. Montalvo explains in his declaration, Mr. Kazen "was a key witness and cross-examination of him was critical in light of the testimony in his written witness statement." *Id*. at ¶ 34. Mr. Montalvo further explains how, "Mr. Kazem would also have provided testimony regarding all aspects of the business interests and interactions that had a bearing on the proceedings and Respondent's defenses and counter-claims such as the claim for breach of contract. For example, the purposes for which the loan proceeds could be used was a factual dispute between the parties that the Arbitrator ultimately resolved against Respondents on the basis of Mr. Kazem's written witness statement." *Id*. at ¶ 35. Moreover, Respondents had obtained documents from Claimant's files through the document disclosure process and through Freedom of Information Act requests that they intended to use to cross-examine Mr. Kazem at the hearing. *See id*. at ¶¶ 33, 59. They never got that opportunity.

Second, cancelling the hearing deprived Defendants of the opportunity to cross-examine Plaintiff's expert witness Mr. Ahmadi on the statute of limitations issue. *See id*. at ¶ 61. It further deprived Respondents of the opportunity to introduce rebuttal testimony from their own expert Ms. Duryea. *See id*. at ¶ 62. Here, Defendants' expert witness, Ms. Duryea, intended to testify on the statute of limitations under Afghan law, and specifically respond to the report submitted by the Plaintiff's expert witness, Mr. Ahmadi, on April 1, 2020, which was his only report to discuss the statute of limitations. *See id*. at ¶¶ 36, 44, 62. The only opportunity Ms. Duryea would have had to respond to Mr. Ahmadi's new arguments would be in the manner provided for in paragraph 8.15 of Procedural Order No. 1. *See id*. at ¶ 44.

As a result, Claimant's expert evidence on the statute of limitations defense—submitted only 18 hours before the arbitrator made his decision to cancel the hearing—was left "unrebutted." *Cf. Tempo*, 120 F.3d at 20. The arbitrator proceeded to rely exclusively upon that

expert report to reject the merits of Respondents' statute of limitations defense. *See* Montalvo Decl. Exhibit 23 at ¶¶ 102-07 & nn. 56-57. If established, that defense would have constituted a "complete defense" to the Plaintiff's claim. *See e.g., Hall v. Eastern Airlines*, 511 F.2d 663, 664 (5th Cir. 1975) (affirming district court's refusal to recognize award after the tribunal refused to consider party's alibi defense as untimely and finding that "[t]he presentation of one's defense is a basic due process right," which the tribunal had infringed upon).

### V.      CONCLUSION

In March of 2020, as frightening images and news from Italy warned of the COVID-19 pandemic's lethal consequences, the United States underwent an unprecedented shut down of its economy in order to save lives. At the time, there were even more unknowns than those that remain with us today. The pandemic disrupted nearly every sector of the economy almost immediately. The legal profession was no exception. It was in the context of that emerging crisis, unprecedented in the last 100 years, that the arbitrator in this case made a mistake when he responded by cancelling the hearing and deciding to rule on the written record as it then stood, based on his mistaken understanding of the content of the record at the time.

Cancellation of the hearing was not his only option. He had other reasonable alternatives that would have been less prejudicial to the Respondents' defense. He made an honest mistake that anyone could have made, especially under the unique circumstances at the time. The arbitrator's error was sufficiently serious that he felt compelled to explain it in his award. Accepting that explanation, however, would render due process a casualty of COVID-19. The Respondents sought out arbitration of their dispute, but they never got the benefit of the hearing they bargained for at the outset of it. Arbitration awards are entitled to great deference by the courts. In order for their awards to earn that judicial deference, arbitral tribunals must ensure

16

that their procedures provide for due process. The arbitrator's decision to cancel the hearing in

this case did not satisfy the requirements of due process and caused Defendants to be unable to

present their case within the meaning of Article V(1)(b) of the New York Convention.

## RELIEF REQUESTED

For the reasons stated herein, Defendants respectfully request that the Court enter an

Order denying Plaintiff's motion, or in the alternative, that the court maintain the existing stay

through October 15, 2020, which is "three months after the award is filed or delivered" and the

deadline set by 9 U.S.C. § 12 for Defendants to serve on Plaintiff a petition to vacate the award .

Dated:  August 21, 2020

Respectfully submitted,

\_\_\_/s/_____
James H. Boykin (VSB# 67980)
Alexander S. Bedrosyan
Carter Rosekrans
Hughes Hubbard & Reed LLP
1775 I Street N.W., Suite 600
Washington D.C.  20006
Tel:  (202) 721-4751
Fax:  (202) 721-4646
james.boykin@hugheshubbard.com

97680839_2

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2020, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record who are registered with CM/ECF.  There are no *pro se* parties in

this matter.

_____/s/_____
James H. Boykin (VSB# 67980)
Hughes Hubbard & Reed LLP
1775 I Street N.W., Suite 600
Washington D.C.  20006
Tel:  (202) 721-4751
Fax:  (202) 721-4646
james.boykin@hugheshubbard.com

97680839_2