**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **AFGHAN GROWTH FINANCE LLC**, | |
| Plaintiff, | |
| v. | Case No.: 1:14-cv-669 |
| **ABDUL GHAFOOR, et al**. | |
| Defendants. | |

**DECLARATION OF ERIC MONTALVO
IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
CONFIRM RECOGNIZE AND ENFORCE ARBITRATION AWARD**

I, Eric S. Montalvo, Esq. declare as follows:

1.      I was counsel to RANA Technology Enterprises, Abdul Ghafoor, Shafi Ghafoor, and Farhad Ghafoor ("Respondents" or "Defendants") in ICC Arbitration Case No. 24601/MK, the award in which Afghan Growth Finance, LLC ("Claimant" or "Plaintiff") has moved this Court to confirm, recognize, and enforce (the "Award"). I have personal knowledge of the facts set forth in this declaration concerning that arbitration and, if called to testify as a witness, could and would do so under oath.

2.      Much of the procedural history of the arbitration is set forth in the Award. However, in this declaration, I describe some important procedural steps that the Award does not recount, in particular, Respondents' designation on March 20, 2020 of witnesses for examination at the hearing. *See* Exhibit 14. In this declaration, I also describe in more detail specific parts of that procedural history that bear on the evidentiary hearing originally scheduled for March 13,

2020 that was subsequently rescheduled for April 13-14, 2020 and then suddenly cancelled on April 2, 2020.

    3.    I focus on these portions of the procedural history because they illustrate how the Arbitrator's April 2, 2020 decision to cancel the hearing and to instead decide the case on the papers deprived Respondents of the opportunity to present their case.  As explained in more detail in this declaration, the Arbitrator's sudden decision deprived Respondents of an opportunity to present their case in three important ways:

    a.    <u>First</u>, the Arbitrator's cancellation of the hearing prevented Respondents from having the opportunity to cross-examine Mr. Mustafa Kazem, Claimant's director and sole fact-witness, whom Respondents designated on March 20, 2020 as a witness for cross-examination at the hearing.  *See* ¶ 33.  Although the Arbitrator did not give Respondents an opportunity to examine Mr. Kazem about the contents of his witness statement, the Arbitrator nevertheless relied on that statement to decide a factual dispute against Respondents.  *See* ¶ 59.  Further, Respondents were deprived of an opportunity to examine this witness about subjects that were relevant to include, *inter alia*, Respondents' defenses of laches and that the statute of limitations precluded Claimant's claim. *See* ¶ 60.

    b.    <u>Second</u>, the cancellation of the hearing deprived Respondents of the opportunity to cross-examine Mr. Ali Ahmadi, Claimant's expert witness on Afghan law, who submitted two expert reports in the arbitration. Claimant submitted Mr. Ahmadi's second expert report into evidence on April 1, 2020, only one day before the Arbitrator cancelled the hearing.

Mr. Ahmadi's second report addressed a subject that he had not discussed in his first report, namely, the question of whether or not, as a matter of Afghan law, the statute of limitations barred Claimant's claim. In his Award, the Arbitrator relied exclusively upon Mr. Ahmadi's second expert report to dismiss this important defense.

c. Third, the Arbitrator's sudden cancellation of the hearing deprived Respondents of the opportunity to rebut Mr. Ahmadi's second witness statement with direct expert evidence from Ms. Catherine Baylin Duryea, Respondents' own expert witness on Afghan law. Ms. Duryea had submitted an expert report dated December 16, 2020 on issues of Afghan law. On March 20, 2020, Respondents designated her as one of their witnesses who would attend the hearing. *See* Exhibit 14. In addition to the testimony she provided in her written witness statement, Ms. Duryea would have testified at the hearing to rebut the opinion expressed by Mr. Ahmadi in his second expert report. Respondents never had the opportunity to present Ms. Duryea on direct examination.

4. Procedural Order No. 1 in the arbitration specifically provided for each of these opportunities to test Claimant's evidence. *See* Exhibit 3. The Arbitrator's decision to cancel the hearing deprived Respondents of the benefit of the procedures for presenting their defense established at the very outset of the arbitration in Procedural Order No. 1.

5. I now turn to the specific events leading up to the Arbitrator's sudden cancellation of the hearing, and I explain why the failure to hold the hearing ultimately denied Respondents the opportunity to be heard at a meaningful time and in a meaningful manner.

**Procedural Order No. 1 and the Arbitration Timetable**

6.      On July 3, 2019, Claimant submitted its Request for Arbitration to the International Court of Arbitration of the International Chamber of Commerce (the "ICC").

7.      On September 24, 2019, the ICC fixed the place of arbitration as Washington, D.C.

8.      On October 3, 2019, the ICC appointed Mr. Ian A. Laird (the "Arbitrator") as the sole arbitrator.

9.      On October 28, 2019, the Arbitrator invited the Parties to submit comments on the structure of the proceedings by November 1, 2019.

10.      On November 1, 2019, the Claimant wrote to the Arbitrator and urged that he decide the case based solely on documentary evidence and without holding an evidentiary hearing.  Among other things, Respondents urged the Arbitrator to hold a hearing.

11.      On November 4, 2019, the Arbitrator held a case management conference with counsel for Claimant and counsel for Respondents.  After that conference, the Arbitrator circulated a draft procedural order and invited the parties to provide their comments on it and on the attached schedule by November 7, 2019.  The parties exchanged correspondence regarding the procedural order.  That correspondence reflected, among other things, the parties' disagreement over the need to hold an evidentiary hearing.  Claimant argued that an evidentiary hearing was unnecessary and that the Arbitrator should decide the case solely on the papers. Claimant consented to the Arbitrator's draft procedural order, but emphasized "the need for an expeditious and cost-efficient proceeding,"  Exhibit 1.  Respondents insisted that an evidentiary hearing was necessary, asserting the need "to robustly present their claims and defenses, which

cannot be accomplished without the opportunity to reply and rebut Claimant's witnesses with expert testimony and other relevant witness testimony".  Exhibit 2.

12.     On November 5, 2019, the ICC Secretariat informed the parties and the Arbitrator that the time limit for rendering the final award was six months from the date of the case management conference, in other words, May 4, 2020.

13.     On November 8, 2019, the Arbitrator issued a final version of Procedural Order No. 1, a true and correct copy of which is attached hereto as Exhibit 3.  Annex A of Procedural Order No. 1 set forth a timetable for written submission and fixed two days during the week of March 23, 2020 for the evidentiary hearing that Respondents had requested.  According to the timetable established by Procedural Order No. 1, the parties were required to provide their witness notifications by March 13, 2020.

14.     A copy of the complete timetable established by Procedural Order No. 1 is reproduced here:

**ANNEX A**

**PROCEDURAL Timetable**

| | |
|---|---|
| Case Management Meeting | 4 November 2019 |
| Respondents' Application to Disqualify Claimant's Counsel | 15 November 2019 |
| Claimant's Reply to Application to Disqualify Claimant's Counsel | 22 November 2019 |
| Tribunal's Decision on Respondents' Application to Disqualify Claimant's Counsel | 29 November 2019 |
| Claimant's Statement of Claim ("C-SoC") | 16 December 2019 |
| Responents' Submission on Jurisdiction and Counterclaims ("R-SoJ/CC") | 16 December 2019 |
| Parties to exchange Redfern Schedules | 3 January 2020 |
| Parties to exchange Redfern Objections | 17 January 2020 |
| Parties Exchange Replies to Redfern objections | 31 January 2020 |
| Tribunal's Ruling on Disputed Redfern requests | 7 February 2020 |
| Production of Documents | 21 February 2020 |
| Claimant's Reply on Jurisdiction and Counterclaims ("C-Reply") | 6 March 2020 |
| Respondents' Statement of Defense ("R-SoD") | 6 March 2020 |
| Witness notification | 13 March 2020 |
| Pre-hearing organizational meeting | 16 March 2020 |
| List of attendees at the Hearing | 18 March 2020 |
| Hearing | (2 days + 1 in reserve, Week of 23 March 2020) |
| Costs submissions | 2 weeks after close of Hearing |
| Award Submitted to ICC for Scrutiny | 3 weeks after close of Hearing |

15.    In addition to providing for an evidentiary hearing, Procedural Order No. 1 contained several other important provisions:

a.   "8.10   Each witness who submits a witness statement **shall be available** for cross-examination during the hearing.  Counsel shall be in charge of ensuring that each witness will appear at the right time and place to be examined at the hearing."  (Emphasis supplied.)

b.  "8.11    On or before the date set out in the Procedural Timetable, each Party shall notify the other Party, with a copy to the Tribunal, which of the other Party's witnesses it wishes to cross-examine at the hearing."

c.  "8.13    If a witness whose appearance was requested by the other Party fails to appear at the hearing without reason considered valid by the Tribunal, the witness statement filed on behalf of such witness shall be disregarded, unless the other Party expressly waives its right to cross-examine the witness or, in exceptional circumstances, if the Tribunal determines otherwise after hearing the Parties."

d.  "8.15    Each witness will be invited to confirm his or her witness statement at the hearing.  The witness statement shall serve as the witness' evidence-in-chief for cross examination at the hearing.  When new facts have arisen since the witness statement, the witness may give testimony during direct examination, limited to those new facts."

e.  "8.20 The Tribunal shall, at all times, have a complete right of control over the procedure in relation to the examination of a witness, including the right to limit or refuse the right of a Party to examine a witness when, after duly hearing the requesting Party, it considers that the factual allegations on which the witness will be heard are sufficiently proven by exhibits or other witnesses, or that the particular witness testimony as such is irrelevant.  In addition, if the circumstances so warrant or upon a Party's reasoned request, the Tribunal may in its discretion re-call a witness for additional examination.

f. "9.1     Each Party shall have the opportunity to file reports or statements by expert witnesses retained by them.  The provisions on Witness Evidence shall apply mutatis mutandis (see Section 8 above).  A report or a statement by an expert must be submitted with the substantive submission it is being submitted in support of."

16.     I relied upon the procedures established in Procedural Order No. 1, in particular those listed above pertaining to witness testimony, to make decisions about how to present the Respondents' defense in the arbitration.

**The Initial Round of Written Submissions**

17.     On December 16, 2019, Claimant submitted its Statement of Claims pursuant to the timetable established in Procedural Order No. 1.  In support of its Statement of Claims, the Claimant submitted:  (i) the Witness Statement of Mustafa Kazem; and (ii) the Expert Witness Statement of Ali Ahmadi.  A true and correct copy of the Witness Statement of Mustafa Kazem and the Expert Witness Statement of Ali Ahmadi, is attached hereto as Exhibit 4.

18.     That same day, on December 16, 2019, Respondents submitted their Submission on Jurisdiction and Counterclaims, including the following supporting documents:  (i) the Expert Witness Statement of Catherine Baylin Duryea, an expert on the law of Afghanistan; (ii) the Witness Statement of Abdul Ghafoor; (iii) the Witness Statement of Farhad Ghafoor; and (iv) the Witness Statement of Shafi Ghafoor.  True and correct copies of these four witness statements are attached here to as Exhibit 5.  Respondents' Submission on Jurisdiction raised two jurisdictional defenses to Claimant's claim.  First, it argued that Claimant's claim was barred by the doctrine of *res judicata*.  Second, it argued that RANA was not a proper party to the arbitration.

19.     On February 6, 2020, my associate, Jennifer Hooshmand, sent an email at my instruction to the Arbitrator asking when he intended to resolve Respondents' jurisdictional objections.  Ms. Hooshmand's email raised one additional issue.  She advised the Arbitrator that Claimant's claim in the arbitration was barred under Afghan law by a four-year statute of limitations.  It therefore constituted a complete defense to Claimant's claim.  Because it operated as a complete bar to Claimant's claim, Ms. Hooshmand suggested in her email that it would be more efficient for the Arbitrator to consider that defense as a preliminary matter along with Respondents' two defenses set out in its Submission on Jurisdiction and Counterclaims.  A true and correct copy of Ms. Hooshmand's email is attached hereto as Exhibit 6.

20.     The Arbitrator responded that same day by email.  A true and correct copy of the Arbitrator's February 6, 2020 email is attached hereto as Exhibit 7.  The Arbitrator wrote that, "these issues have been raised late and not in accordance with the procedural schedule[.]"  That remark was confusing, because Respondents had timely raised two jurisdictional defenses in their December 16, 2020 submission, which was the deadline fixed in Annex A of Procedural Order No. 1.  Thus, neither defense was untimely.

21.     As for the statute of limitations defense, my understanding is that, as a matter of Afghan law, which is the law governing the underlying contract, the statute of limitations was a defense to Claimant's claim.  The question of whether the statute of limitations operated as a jurisdictional defense, such that it deprived the Arbitrator of jurisdiction to hear the case, or whether it operated an affirmative defense on the merits that barred the Claimant's claim (but did not affect the Arbitrator's jurisdiction) was itself a question of Afghan law on which expert evidence was needed.  It was not a defense that could be dismissed out of hand as untimely, especially when, under the original timetable established in Procedural Order No. 1,

Respondents' Statement of Defense was not due until March 6, 2020. (The due date for Respondent's Statement of Defense was later extended to April 1, 2020.)

22.    On March 3, 2020, the Arbitrator sent an email concerning arrangements for the hearing. A true and correct copy of the Arbitrator's email is attached hereto as Exhibit 8. In his email, the Arbitrator stressed that the deadline for witness notification was March 13, 2020 and further observed that, "witnesses who have submitted witness statements shall be made available for cross-examination." This reinforced my understanding that I would have an opportunity to cross-examine Respondent's two witnesses who had submitted witness statements in the arbitration as long as I notified those witnesses of my intention to do so by the deadline for witness notifications.

23.    On March 5, 2020, the Arbitrator issued a revised procedural timetable to accommodate a medical emergency suffered by my associate, Ms. Hooshmand. The revised procedural timetable extended the deadline for witness notification to April 3, 2020 and fixed the hearing for the week of April 13, 2020. A true and correct copy of the revised procedural timetable is attached hereto as Exhibit 9 and reproduced here:

**ANNEX A**

**REVISED PROCEDURAL Timetable (5 March 2020)**

| | | |
|---|---|---|
| Claimant's Reply on Jurisdiction and Counterclaims ("C-Reply") | 6 March 2020 | 27 March 2020 |
| Respondents' Statement of Defense ("R-SoD") | 6 March 2020 | 27 March 2020 |
| Witness notification | 13 March 2020 | 3 April 2020 |
| Pre-hearing organizational meeting | 16 March 2020 | 6 April 2020 |
| List of attendees at the Hearing | 18 March 2020 | 8 April 2020 |
| Hearing | 25-26 March 2020 | Week of 13 April 2020 |
| Costs submissions | 2 weeks after close of Hearing | 2 weeks after close of Hearing |
| Award Submitted to ICC for Scrutiny | 3 weeks after close of Hearing | 3 weeks after close of Hearing |

**The COVID-19 Pandemic and the Arbitration Timetable**

24.     On March 11, 2020 the ICC sent all parties an email that "encourage[d] parties, arbitral tribunals and other neutrals to remain appraised of any developments and consider discussing their potential impact on pending proceedings, if and when necessary" and "[w]ith particular regard to attendance of scheduled hearings, other in-person meetings and any related travel by parties, arbitral tribunals, neutrals and others involved in pending proceedings . . . urge[d] [the parties] to consult any official recommendations or directives applicable (i) at the place of their departure and any transit points; and (ii) at the place where they will be held." Exhibit 10.

25.     By March 13, 2020, Europe had become the epicenter of the global COVID-19 pandemic and concerns abounded about the spread of the virus in the United States.  In light of these circumstances, I wrote to the Arbitrator and suggested a conference call and requested a

"one month continuance of the proceedings with weekly updates to assess the circumstances." A true and correct copy of my email is attached hereto as Exhibit 11.

26.　　The Arbitrator responded by email that same day observing that:

> "[t]here are of course a number of options that can be taken in light of the evolving circumstances to maintain our schedule, including options (and I say this not indicating any prior decisions before hearing from the parties) for using videoconferencing in some manner for the hearing.  However, I am mindful there may be unexpected impacts to which we may need to adjust."

He then proposed a teleconference for the following week to discuss a list of questions that he included in his email.  A true and correct copy of the Arbitrator's March 13, 2020 email is attached hereto as Exhibit 12.

27.　　On Wednesday, March 18, 2020, the Arbitrator held a teleconference with the parties.  During that call, I reiterated my request for a one-month continuance of the hearing.  At that time, there was tremendous uncertainty about the spread of the SARS-CoV-2 virus.  The news reports and images coming from Italy and Spain of overwhelmed hospitals and morgues were frightening.  One began to hear everywhere about the imperative to stay home in order to "flatten the curve" and slow the spread of the virus in the United States.

28.　　At the March 18, 2020 conference, the Claimant objected to a continuance of the arbitration and proposed instead to hold the hearing by videoconference.  At that point, completely virtual hearings were untested and not as commonplace as they have since become, and I expressed the concerns I had at that time about the technical difficulties that might arise.

29.　　The following day, on Thursday, March 19, 2020, the Arbitrator sent an email in which he ordered the following:

> "(i)　　an extension of 5 days for the filing of the next round of submissions by
>
> both Parties (having been rescheduled to 27 March) to 1 April 2020. The

remainder of the schedule currently remains the same as set out in the Revised

Procedural Timetable of 5 March 2020;

(ii)    Claimant has agreed to prepare an initial proposal and suggested options

for holding the hearing on the current dates using videoconference technology for

consideration by the Parties and Tribunal. The Tribunal requests that the Claimant

produce the proposal by 31 March 2020; and

(iii)    the parties circulate by Friday 20 March the potential geographic locations

of counsel, witnesses, and client representatives to assist Claimant in preparing its

proposal."

A true and correct copy of the Arbitrator's March 19, 2020 email order is attached hereto

as Exhibit 13.

30.    Later that same day, the Arbitrator sent an email correcting a mistake in his

March 19, 2020 email order, "Apologies – I was looking at the wrong week.  With respect to

item (ii) below, the date should rather be 'The Tribunal requests that the Claimant produce the

proposal by 24 March 2020', not 31st as indicated in error."  Exhibit 13.

31.    As a result of the Arbitrator's March 19, 2020 email order, the Respondents'

Statement of Defense and the Claimant's Reply on Jurisdiction and Counterclaims both became

due on April 1, 2020.  Those were the only two deadlines to have changed.  As indicated in the

March 19, 2020 email order, all other deadlines set in the March 5, 2020 revised procedural

timetable remained fixed, including the April 3, 2020 deadline for final witness notifications.

**Hearing Preparations and Respondents' Witness Designations**

32.    On March 20, 2020, in accordance with the Arbitrator's March 19, 2020 email order, my associate circulated to the Arbitrator and the Claimant a preliminary list witness who Respondents intended to call at the hearing ("Respondents' Preliminary Witness List").  That list also identified who from Respondents' counsel team would attend the hearing and who would attend as client representative.  A true and correct copy of Respondents' Preliminary Witness List is attached hereto as Exhibit 14.

33.    Respondents' Preliminary Witness List identified Mustafa Kazem, Claimant's director, as one of the witnesses Respondents wanted to call for cross-examination at the hearing. Mr. Kazem had submitted a witness statement in the arbitration on December 16, 2019 in support of Claimant's Statement of Claims.  Through document disclosure process in the arbitration that took place in January and February of 2020 and through Freedom of Information Act requests, Respondents obtained documents that I intended to use to cross-examine Mr. Kazem.

34.    In my opinion, he was a key witness and cross-examination of him was critical in light of the testimony in his written witness statement. As the Claimant's director, he would provide testimony regarding Claimant's decision not to initiate arbitration in 2014 as originally ordered to do so by this Court on September 18, 2014.  *See* ECF No. 36.  Additionally, his testimony would have been relevant to Respondents' affirmative defense that, as a matter of Afghan law, the four-year statute of limitations precluded Claimant's claim.  *See* ¶ 60.  It was also relevant to Respondents' defense of laches.

35.    Mr. Kazem would also have provided testimony regarding all aspects of the business interests and interactions that had a bearing on the proceedings and Respondents'

defenses and counter-claims such as the claim for breach of contract.  For example, the purposes for which the loan proceeds could be used was a factual dispute between the parties that the Arbitrator ultimately resolved against Respondents on the basis of Mr. Kazem's written witness statement.  *See* ¶ 59.

36.    Respondents' Preliminary Witness List also identified Ms. Catherine Baylin Duryea, Respondents' expert witness on issues of Afghan law.  Both parties produced expert witnesses on Afghan law, because as noted above, Afghan law governed the underlying contract.  Ms. Duryea's evidence was necessary to support Respondents' defense that, under Afghan law, the statute of limitations had lapsed and therefore provided an affirmative defense on the merits to Claimant's claim.

37.    Respondents' Preliminary Witness List also "reserve[d] the right to amend this witness list at a later time."  We included that provision because the final witness notifications were not due until April 3, 2020.  We expected to receive Claimant's Reply on April 1, 2020 and anticipated that we might wish to designate for cross-examination any witnesses who submitted written witness statements in support of that Reply.

**Preparations for a Hearing using videoconferencing**

38.    On March 24, 2020, the Claimant circulated its Proposal and Suggested Options for holding a hearing on April 13-14 using videoconferencing technology in accordance with paragraph (ii) of the Arbitrator's email order of March 19, 2020 (as amended).  In their Proposal, Claimant outlined several viable solutions for holding a hearing remotely through videoconferencing, using software from Skype, Zoom, or LoopUp.  A true and correct copy of Claimant's proposal is attached hereto as Exhibit 15.

39.     On March 26, 2020, I sent an email commenting on Claimant's proposal in which I suggested that the Arbitrator might first resolve Respondents' two jurisdictional objections raised in their submission of December 16, 2020 and postpone holding any hearing on the merits until after he had ruled on those jurisdictional objections.  A true and correct copy of my March 26, 2020 email is attached hereto as Exhibit 16.   When I sent that email, the Claimant had not yet introduced Dr. Ahmadi's second expert report, which opined for the first time on the statute of limitations under Afghan law.

40.     On March 26, 2020, the Arbitrator sent an email stating that he would "consider the parties' submission [sic] and hope to respond tomorrow in some manner to move this process along."  A true and correct copy of the Arbitrator's March 26, 2020 email is attached hereto as Exhibit 17.

41.     On March 27, 2020, counsel for Claimant wrote an email to the Arbitrator in response to my email of March 26, 2020.  A true and correct copy of Claimant's email is attached hereto as Exhibit 18.  Claimant's email of March 27, 2020 mischaracterized the contents of my email of March 26, 2020.  I never expressed an opinion that the merits of this case could be decided on the papers.  On the contrary, I maintained from the outset of the arbitration that a hearing was necessary, which is why I insisted that Procedural Order No. 1 provide for one.  My email of March 26, 2020 expressed only my opinion that the Arbitrator could resolve Respondents' jurisdictional challenges through an exchange on the papers and postpone the hearing on the merits in light of the uncertainty caused by the emerging pandemic.

42.     In response to an invitation from the Arbitrator to respond to Claimant's March 27, 2020 email, I clarified my position that a hearing on the merits was necessary:

> "Claimant seemingly wants everything decided by paper to avoid witness testimony.  Respondent believes that the jurisdictional issues can be and

typically are resolved through the pleadings and we can move forward to hearing.  Disregarding the context of a global pandemic and its impact upon individuals and businesses, including mine, after seven years of waiting to pursue their claims does not comport with reason.  We are all trying to get through the situation in a way that makes sense and achieves the outcomes set forth.  **We do not concur that the case can be concluded exclusively through the pleadings if the Tribunal determines that it has jurisdiction to move forward**."  (Emphasis supplied.)

A true and correct copy of my email of March 27, 2020 is attached hereto as Exhibit 19.

In that same email, I also expressed my concerns about Claimant's proposal, which required

participants to attend in person at Claimant's offices, and my concerns about how the technology

would work.  Like many lawyers working in the early days of the pandemic, I had concerns

about how a virtual hearing would work from both a technological and a logistical perspective.  I

shared my concerns with opposing counsel and the Arbitrator.  However, I never opposed

holding a virtual hearing if that were the only option.

**The Second Round of Written Submissions and Claimant's New Expert Evidence**

      43.     On April 1, 2020, Claimant submitted its Reply on Jurisdiction and

Counterclaims.  In support of its Reply, Claimant introduced a second witness statement of Mr.

Ali Ahmadi, a true and correct copy of which is attached hereto as Exhibit 21.

      44.     In his second witness statement, Mr. Ahmadi gave evidence concerning the

alleged inapplicability, under Afghan law, of the statute of limitations.  Upon review of this

report by our team we disagreed with its conclusions.  As noted above, on March 20, 2020,

Respondents had included Ms. Duryea on Respondents' Preliminary Witness List.  After

reviewing Mr. Ahmadi's second report, I planned to designate him for cross-examination on

April 3, 2020, when the final list of witness designations was due.  In addition to the previously

anticipated testimony by Ms. Duryea, she would be called to provide oral testimony rebutting the

conclusions reached by Mr. Ahmadi in his second report.  Paragraph 8.15 of the procedural order

contemplated this type of rebuttal testimony and I planned to take advantage of that provision to introduce rebuttal evidence at the hearing.

45.    That same day, Respondents filed their Statement of Defense in accordance with the revised timetable. A key component of Respondents' Statement of Defense was that the Claimant's claim was barred by the statute of limitations.

**Cancellation of the Hearing**

46.    The Arbitrator noted in a March 30, 2020 email that stay at home orders from government officials in the D.C. area, the seat of this arbitration, made an in-person hearing seemingly impossible as the area and the entire country faced tremendous uncertainty regarding the potential impact of the pandemic. *See* Exhibit 20. In that email, the Arbitrator stated his intention to "address the issue of bifurcation as an option, as requested by Respondents . . . [and] take into account the next submissions due on 1 April 2020 before making its decision on which of these options it will adopt." The Arbitrator indicated that he would decide on bifurcation after receiving those submissions and subsequently decide on the remaining schedule and procedure.

47.    At no point did the Arbitrator suggest his own opposition to having a hearing by videoconference, despite our shared hesitation at adjusting to new technologies, as other court systems and businesses were doing at the same time in light of the pandemic.

48.    At a minimum, it seemed at least worth asking if the ICC would extend the Award deadline. Speed and efficiency are laudable objectives, but these were unprecedented times. Surely, concerns for the health and safety of the arbitration participants as well as concerns for due process outweighed any need to complete the arbitration within an arbitrary six-month time frame. As the Award would later make apparent, the ICC was indeed flexible. The ICC granted five extensions of that deadline to the Arbitrator. *See* Exhibit 23 at ¶¶ 63-64. Evidently, it was

in fact possible to hold a virtual hearing and still comply with the ICC deadlines by seeking an extension.

49.     As noted above, we did not receive the second expert witness statement of Mr. Ahmadi, Claimant's Afghan law expert, until the evening of April 1, 2020. Mr. Ahmadi's second statement submitted on April 1, 2020 was the first time he opined on the statute of limitations under Afghan law. Procedural Order No. 1 provided an opportunity both (i) for me to cross-examine Mr. Ahmadi about his latest opinion and the new opinion it contained; and (ii) an opportunity to present my own expert witness on Afghan law on direct examination to respond to that new evidence. *See* Exhibit 3 at ¶¶ 8.10, 8.15. Respondents never got the chance to do either.

50.     Around noon the following day, on April 2, the Arbitrator issued Procedural Order No. 4, in which he cancelled the hearing and elected instead to decide the case based only on the written submissions as of that date. A true and correct copy of Procedural Order No. 4 is attached hereto as Exhibit 22. With respect to proceeding with a hearing by videoconference, the Arbitrator wrote in Procedural Order No. 4 that, "it is the Tribunal's view that, unless absolutely necessary for witnesses to be cross-examined, and in the absence of agreement to delay the proceedings, the videoconference option is not the preferred option."

51.     In Respondents' view, it was absolutely necessary to cross-examine Claimant's two witnesses and to present their own expert on direct at a hearing, and we had prepared Respondents' case in reliance on the provisions of Procedural Order No. 1 that allowed for these possibilities for testing Claimant's evidence. This was especially the case with respect to Claimant's expert witness on Afghan law, who had submitted a second witness statement, in

which he opined, for the first time, on an issue of Afghan law that went to the heart of the

Respondents' defense, only 18 hours before the Arbitrator cancelled the hearing.

52. The Arbitrator was evidently unfamiliar with the record in the arbitration when he

issued Procedural Order No. 4, because his stated reason for cancelling the hearing mistakenly

assumed that Claimant had not introduced any witness testimony:

> "Since Claimant has presented no witness statements in its submissions of 16 December 2019 and 1 April 2020, there are no witnesses that have been presented by Claimant who could be called by Respondents for cross-examination. On this basis (and save for the issue of Mr. Qasimi being called as a witness, as addressed below), there are no Claimant witnesses for Respondents to cross-examine at a hearing by videoconference."

53. The Arbitrator overlooked the fact that Claimant had introduced a second expert

report of its expert, Mr. Ahmadi, just the day before, and he further overlooked how Claimant

had introduced Mr. Kazem's witness statement and Mr. Ahmadi's first expert report with its

December 16, 2019 submission.

54. In his final award dated July 7, 2020, the Arbitrator recognized the mistake he had

made in Procedural Order No. 4. In footnote nine, the Arbitrator wrote:

> "In Procedural Order No. 4, the Tribunal indicated that Claimant had not presented any witnesses for cross examination. See Procedural Order No. 4, para. 18. The Tribunal makes a correction and adds to the reasoning in Procedural Order No. 4. Claimant submitted the witness statement of Mustafa Kazem as exhibit C-2 and expert witness statements from Mr. Ali Ahmadi, as exhibits C-13 and C-19."

But after recognizing his error, he tried to explain it away:

> "However, this does not change the decision rendered in Procedural Order No. 4 as Respondents provided no indication that they intended to cross-examine these witness or provided argument to justify their cross-examination."

55. That was also wrong. The Arbitrator once again overlooked a key procedural step

that Respondents had taken. On March 20, 2020, Respondents submitted, pursuant to paragraph

(iii) of the Arbitrator's March 19, 2020 email order, their Preliminary Witness List.  *See* ¶ 32. The Award is therefore wrong when it states that Respondents never called Mr. Kazem for cross-examination.  They had, in fact, done so as the Arbitrator instructed them to do.  Curiously, the Award's recitation of the procedural history makes no mention of Claimant's submission of its Preliminary Witness List.  *See* Exh. 23 at ¶¶ 54-56 (omitting Respondents' March 20, 2020 submission, which is attached here to as Exh. 14.)

56.     In footnote nine of his Award, the Arbitrator ultimately concludes with a final rationalization of his decision to cancel the hearing.  The Arbitrator wrote that even "[i]f Respondents had made such a request, the Tribunal would have in any event maintained its order as it would have decided that the most efficient and effective manner to complete the arbitration **based on the record before it** was to decide the case on the written record and that an oral hearing was unnecessary."  Exhibit 23 (Emphasis supplied).  But the Arbitrator's decision to cancel the hearing on April 2, 2020 could not have been "based on the record before" the Arbitrator, because, when he wrote Procedural Order No. 4, the Arbitrator was evidently not familiar with the record.  Otherwise, he would not have overlooked the fact that Claimant had submitted three witness statements from two witness and he would not have needed to "make[] a correction and add[] to the reasoning in Procedural Order No. 4" in his Award.

57.     For the reasons explained in the next section, the Arbitrator's decision to cancel the hearing deprived Respondents of the opportunity to present their case.

**The Impact of the Hearing Cancellation on Respondents' Defense**

58.     The Arbitrator's decision to cancel the hearing prevented Respondents from presenting their defense in several ways.

59.     <u>First</u>, the purposes for which the loan could be used was a factual dispute between the parties.  The Arbitrator relied on Mr. Kazem's written witness statement to resolve this factual dispute against the Respondents and in favor of Claimant.  *See* Exhibit 23 at ¶ 133.  I had obtained documents from Claimant through the document disclosure process and through Freedom of Information Act requests that I intended to use to cross-examine Mr. Kazem on a number of subjects, including Claimant's business interests and Mr. Kazem's interactions with Respondents that were relevant to the proceedings as well as Respondent's defenses and counter-claims such as the claim for breach of contract.  Respondents never had an opportunity to test Mr. Kazem's evidence on these subjects through cross-examination as contemplated by Procedural Order No. 1.

60.     <u>Second</u>, Respondents were deprived of the opportunity to examine Mr. Kazem about why the Claimant had waited nearly six years to initiate the arbitration proceedings.  Claimant's delay in initiating the arbitration was relevant to Respondents' defenses of laches and that the statute of limitations precluded Claimant's claim.

61.     <u>Third</u>, Claimant introduced new evidence on Afghan law on April 1, 2020 with Mr. Ahmadi's second witness statement.  Mr. Ahmadi's new evidence pertained to Respondents' statute of limitations defense.  Respondents had the right under Procedural Order No. 1 to challenge Mr. Ahmadi's most recent evidence through cross-examination of Mr. Ahmadi at a hearing.  After receiving Mr. Ahmadi's second expert report on April 1, 2020, Respondents intended to designate him for cross-examination in their final witness list that was due on April

3, 2020.  Respondents never got the chance, because the Arbitrator cancelled the hearing on April 2, 2020 before we could do so.

62.     Fourth, Procedural Order No. 1 also gave Respondents the right to challenge Mr. Ahmadi's second expert report through the direct examination of their own expert witness on Afghan law, Ms. Catherine Baylin Duryea.  *See* Exhibit 3 at ¶¶ 8.15 ("When new facts have arisen since the witness' last witness statement, the witness may give testimony during direct examination, limited to those new facts."), 9.1 ("The provisions on Witness Evidence shall apply mutatis mutandis (see Section 8 above).").  Respondents had designated Ms. Duryea as a witness on their Preliminary Witness List that Respondents submitted to the Arbitrator on March 20, 2020.  After receiving Mr. Ahmadi's second expert report on April 1, 2020, Respondents intended to have Ms. Duryea respond to his report in direct examination at the hearing to explain why his conclusions about the statute of limitations in that report were wrong.  Ms. Duryea would also explain why the statute of limitations barred Claimant's claim on the merits as a matter of Afghan law.  The Arbitrator never got the opportunity to hear this important expert evidence from Respondents' expert.

63.     The four-year statute of limitations under Afghan law to bring a contract claim was Respondents' strongest defense.  This Court first ordered Claimant to arbitrate its claim against Respondents on September 18, 2014.  The Court moved this case to its inactive docket on January 13, 2015.  For reasons that have continually shifted, Claimant chose not to commence arbitration until July 3, 2019.  As a matter of Afghan law, Respondents had a complete defense to Claimant's claim as a result of Claimant's delay in commencing arbitration.  Indeed, the Joint Status Report that the Arbitrator found to constitute the Parties' arbitration agreement specifically provided that, "this Joint Status report does not constitute a waiver of any claims or

defenses that are or may be available under either the Loan Agreement or the Guarantees." ECF No. 71 at ¶ 12.

64.     As noted above, Respondents first raised the statute of limitations in an email to the Arbitrator dated February 6, 2020 and suggested that it would be more efficient for the Arbitrator to resolve this defense as a preliminary matter. *See* ¶ 19.  Respondents included this defense in their Statement of Defense that they submitted on April 1, 2020 in accordance with the revised procedural timetable.

65.     I believe the arbitrator improperly found in the Award that Respondents had raised the statute of limitations defense in an untimely manner. *See* Exhibit 23 at ¶ 103. However, the time for raising such a defense and whether it can be waived are themselves questions of Afghan law about which the Respondents were denied an opportunity to introduce evidence through (i) cross-examination of Mr. Ahmadi and (ii) direct of examination of Ms. Duryea.

66.     Although the Arbitrator found that the statute of limitations defense was untimely raised, the Arbitrator proceeded to analyze the merits of Respondents' statute of limitations defense as a matter of Afghan law. *See* Exhibit 23 at ¶¶ 105-107.  In rejecting the merits of that defense, the Arbitrator based his reasoning exclusively on Mr. Ahmadi's second expert report that Claimant introduced into the arbitration on April 1, 2020. *See* Exhibit 23 at ¶¶ 105-107.

67.     The Arbitrator relied on Mr. Ahmadi's second report notwithstanding the fact that Respondents had been deprived of any opportunity to challenge its contents either through cross-examination of Mr. Ahmadi or through direct testimony of their own expert, Mr. Duryea, once the Arbitrator suddenly canceled the hearing on April 2, 2020.  Procedural Order No. 1 specifically provided these mechanisms for testing Claimant's evidence.  Instead of allowing

Respondents the opportunity to test Mr. Ahmadi's evidence, the Arbitrator rejected Respondents'

strongest defense on the merits on the basis of Mr. Ahmadi's testimony about Afghan law.

**A virtual hearing was a more reasonable alternative**

68.    By cancelling the hearing and failing to allow for cross-examination of Mr.

Kazem and Mr. Ahmadi and failing to allow for the presentation of direct testimony from Ms.

Duryea in response to Mr. Ahmadi's second witness statement, the Arbitrator deprived

Respondents of an opportunity to present their case.  The Arbitrator had alternatives to the

extreme step of cancelling the hearing.  He could have provided for a virtual one as many courts

and arbitral tribunals have done since the pandemic started and which the parties actively

discussed.  *See* Exhibit 15.  Or, alternatively, he could have also provided an opportunity to

exchange further written submissions on specific narrow issues, such as providing an opportunity

to respond to the opinion expressed in Mr. Ahmadi's second report on the statute of limitations.

69.    If the Arbitrator had provided me with a choice as between either a virtual hearing

or no hearing at all, I would have chosen a virtual hearing.  Proceeding on the written record as it

stood on April 2, 2020, without an opportunity to cross-examine Claimant's witnesses, especially

Claimant's expert on Afghan law, simply was not a viable option.  It did not allow Respondents

to challenge critical testimony on what was a dispositive issue of Afghan law.

70.    Cancelling the hearing was an overreaction, notwithstanding the extreme

uncertainty that prevailed at that time.  It upended a case strategy developed and pursued in

reliance upon the governing procedural order in the arbitration.  Procedural Order No. 1

specifically provided for a hearing at which Respondents would have an opportunity to cross-

examine Claimant's witnesses and introduce rebuttal witness testimony.

71.     The Arbitrator's sudden decision to cancel the hearing, rather than hold a hearing by videoconference, deprived Respondents of the benefit procedures established at the outset of the arbitration for the cross-examination of witnesses and submission of direct testimony in rebuttal.  As a result, Respondents were not able to present their defense in the arbitration.

I declare under penalty of perjury that the foregoing is true and corrected.

Executed on:  August 21, 2020

Respectfully submitted,

_____/s/_____
Eric Montalvo

**Afghan Growth Finance LLC v. Abdul Ghafoor, et al.**

**Declaration of Eric Montalvo**
**Exhibit List**
**August 21, 2020**

| Exhibit No. | Date | Document Description |
|---|---|---|
| Exh. 01 | November 7, 2019 | Claimant's Response re Draft Procedural Order No. 1 |
| Exh. 02 | November 7, 2019 | Respondents' Response re Draft Procedural Order No. 1 |
| Exh. 03 | November 8, 2019 | Procedural Order No. 1 in ICC Case No. 24601 |
| Exh. 04 | December 16, 2019 | Witness Statements in Support of Claimant's Statement of Claims: (i) Statement of Mustafa Kazem (CWS-1) and (ii) Expert Witness Statement of Ali Ahmadi (CWS-2) |
| Exh. 05 | December 16, 2019 | Respondents' Witness Statements |

| Exhibit No. | Date | Document Description |
|---|---|---|
| Exh. 06 | February 6, 2020 | Email from J. Hooshmand re Respondents' Inquiry re Jurisdictional Issues and Statute of Limitations |
| Exh. 07 | February 6, 2020 | Email from I. Laird re Respondents' Inquiry re Jurisdictional Issues and Statute of Limitations |
| Exh. 08 | March 3, 2020 | Email from I. Laird re Hearing Arrangements |
| Exh. 09 | March 5, 2020 | Revised Procedural Timetable |
| Exh. 10 | March 11, 2020 | Email from ICC re COVID-19 message to parties and neutrals in ICC DRS matters |
| Exh. 11 | March 13, 2020 | Email from E. Montalvo re Coronavirus |
| Exh. 12 | March 13, 2020 | Email from I. Laird re Coronavirus |

| Exhibit No. | Date | Document Description |
|---|---|---|
| Exh. 13 | March 19, 2020 | Email from I. Laird re Coronavirus |
| Exh. 14 | March 20, 2020 | Respondents' List of Counsel, Potential Witnesses, and Client Representatives |
| Exh. 15 | March 24, 2020 | Email from J. Blerina re Claimant's Proposal and Suggested Options on Holding the Hearing |
| Exh. 16 | March 26, 2020 | Email from E. Montalvo re Coronavirus |
| Exh. 17 | March 26, 2020 | Email from I. Laird re Coronavirus |
| Exh. 18 | March 27, 2020 | Email from E. Qasimi re Coronavirus |
| Exh. 19 | March 27, 2020 | Email from E. Montalvo re Coronavirus |

| Exhibit No. | Date | Document Description |
|---|---|---|
| Exh. 20 | March 30, 2020 | Email from I. Laird re Coronavirus |
| Exh. 21 | April 1, 2020 | Claimant's Second Witness Statement of Ali Ahmadi (CWS-3) |
| Exh. 22 | April 2, 2020 | Procedural Order No. 4 in ICC Case No. 24601 |
| Exh. 23 | July 7, 2020 | Final Award in ICC Case No. 24601 |