# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **AFGHAN GROWTH FINANCE LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **ABDUL GHAFOOR, et al**. <br><br> Defendants. | Case No.: 1:14-cv-669 <br><br> **ORAL ARGUMENT REQUESTED** |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

Defendants Abdul Ghafoor, Shafi Ghafoor, and Farhad Ghafoor ("Defendants" or "Respondents,") by counsel, submit this Reply (the "Reply") to Plaintiff's Opposition to the Motion to Vacate Arbitration Award (the "Opposition.")

**I.     INTRODUCTION**

Plaintiff's Opposition fails to rebut Defendants' demonstration that the Arbitrator's last minute decision on April 2, 2020 to cancel the hearing and instead to decide the case on the record as it stood as of that date violated Defendants' due process rights by denying them the "meaningful hearing" required by law. *See Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556, 564–565 (E.D. Va. 2016) (citations omitted). In Defendants' Memorandum in Opposition to Plaintiff's Motion to Confirm, Recognize, and Enforce Arbitration Award, and in Defendants' Memorandum in Support of Motion to Vacate Arbitration Award ("Vacatur Memorandum,") Defendants showed that the Arbitrator's decision deprived Defendants of due process in two ways:

- First, the Arbitrator deprived Defendants of the opportunity to cross-examine Plaintiff's director and sole fact witness, Mr. Mustafa Kazem. In both their Motion to Vacate and their Opposition to Plaintiff's Motion to Enforce, Defendants showed the prejudiced they suffered as a result of not being able to cross-examine Mr. Kazem. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. to Confirm Award 13–14, ECF No. 94; Defs.' Mem. Supp. Mot. to Vacate Award 2, 7–8, ECF No. 98; Montalvo Decl. ¶¶ 33–35, 59–60, ECF No. 95.[1]

- Second, the Arbitrator deprived Defendants of the opportunity to challenge the contents of Mr. Ahmadi's second witness statement, introduced into evidence only one day before the Arbitrator shut down the proceedings, through the mechanisms previously established in Procedural Order No. 1 for challenging witness testimony. Procedural Order No. 1 gave Defendants the right to challenge the contents of Mr. Ahmadi's second witness statement both through cross-examination of him and by having their own expert witness on Afghan law, Prof. Duryea, respond with her own direct testimony. Defendants have shown how they were deprived of due process as a result of the loss of these procedural rights. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. to Confirm Award 14–15, ECF No. 94; Defs.' Mem. Supp. Mot. to Vacate Award 15–19, ECF No. 98; Montalvo Decl. ¶¶ 36, 61-67, ECF No. 95.

As a result, this Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3), 9 U.S.C. § 207 and Article V(1)(b) of the New York Convention.

---

[1] Plaintiff's Opposition does not address Defendants' evidence of how they were prejudiced by not being able to cross-examine Plaintiff's director and sole fact witness.

## II.     ARGUMENT

### A. Plaintiff ignores the Arbitrator's obligation to protect due process

Once again, Plaintiff repeatedly emphasizes that the Arbitrator allegedly had "absolute discretion" to cancel the hearing under the ICC Expedited Rules that applied to the Arbitration. *See* Pl.'s Opp'n to Mot. to Vacate Award 3–6, ECF No. 101.  Plaintiff's argument misunderstands both the nature of Defendants' challenge, and the relationship between the applicable arbitral rules and each party's right to due process.

First, Plaintiff's argument confuses different bases for seeking vacatur or non-enforcement of an award.  Defendants are not arguing that the Arbitrator failed to apply the parties' arbitration agreement (and arbitral rules incorporated therein).  *Cf.* United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention") Art. V(1)(d), 21 U.S.T. 2517, 330 U.N.T.S. 38 (nonenforcement if "the arbitral procedure was not in accordance with the agreement of the parties"); 9 U.S.C. § 10(a)(4) (vacatur if "the arbitrators exceeded their powers").  Rather, Defendants are arguing that, in applying the parties' agreement, the Arbitrator violated due process.  *See* New York Convention Art. V(1)(b), 21 U.S.T. 2517, 330 U.N.T.S. 38 (nonenforcement if "[t]he party against whom the award is invoked was . . . unable to present his case"); 9 U.S.C. § 10(a)(3) (vacatur if "the arbitrators were guilty of . . . refusing to hear evidence pertinent and material to the controversy").  These are two distinct bases for recourse against an award.  The fact that the Arbitrator enjoyed discretion under the applicable arbitral rules may be relevant to a challenge under the former basis (9 U.S.C. § 10(a)(4) or New York Convention Art. V(1)(d)), but it is irrelevant to a challenge, such as Defendants' motion to vacate, that is brought under 9 U.S.C. § 10(a)(3) and New York Convention Art. V(1)(b).  *See* Defs.' Mot. to Vacate Award 1, ECF 97.

Second, the discretion that the Arbitrator enjoyed under the ICC Expedited Rules was not, as the Plaintiff contends, "absolute," because the Arbitrator was still obligated to apply those rules and exercise his discretion thereunder in a manner that ensured due process. Numerous commentators have observed that a party does not waive its right to due process simply by agreeing to the ICC Expedited Rules. *See The ICC Launches New Expedited Procedure Rules*, Latham & Watkins (May 30, 2017), Boykin Decl. Ex. 1 ("The exercise of the tribunal's power to dispense with the hearing must be carried out in accordance with due process considerations at the seat of arbitration or the place of enforcement. Therefore, tribunals must ensure that the decision not to have an oral hearing does not affect the parties' opportunity to present their respective cases"); *The new expedited procedure in the ICC rules and the danger of an award being set aside*, Garrigues (Nov. 19, 2018), Boykin Decl. Ex. 2 (due process challenge could be based on "the arbitrator's refusal to receive in a hearing proof from witnesses of facts or from experts" and the court "might be inclined to grant it and render the arbitral award null and void"); *see also Fast track arbitration: a time-efficient procedure that could hinder the award?*, Jus Mundi (May 29, 2020), Boykin Decl. Ex. 3 ("In addition, the manner in which arbitrators conduct the arbitral proceedings with regards to . . . the possibility . . . to decide only on a document-basis, may compel the parties to present their case within certain constraints which may then provide grounds for a losing party to seek to set aside the award based on a lack of due process.") "[A]rbitral tribunals are expected to uphold and safeguard the fundamental principles of due process in any proceedings, whether expedited or not." Mohamad Salahudine Abdel Wahab, *Expedited Institutional Arbitral Proceedings Between Autonomy and Regulation, in* Laurent Lévy and Michael Polkinghorne (eds), Expedited Procedures in International Arbitration 133, 152 (ICC 2017), Boykin Decl. Ex. 4; *see id.* pp. 144–46 (analyzing due process concerns

raised by the provisions in the ICC Expedited Rules allowing for decisions solely on the basis of documents, and noting that "arbitrators will no doubt have to cautiously apply [such provisions] taking into consideration the complexity of the case, the circumstances and specificities of the transaction").

Pierre Heitzman's analysis of a tribunal's ability to forego hearings under the ICC Expedited Rules is particularly instructive:

> Whenever written witness statements or expert reports are on the record, and a party requests the possibility to cross-examine the witness or the expert, it may be necessary to convene a hearing, unless the arbitral tribunal determines that the witness or expert testimony is not relevant. That would be the case, if the dispute turns on facts that are sufficiently proven by documentary evidence. For the arbitral tribunal to come to that conclusion, *it would, however, need to conduct a very careful analysis of the entire case at the time of making the decision as to whether to allow or disallow a hearing.*
> . . .
> If, however, the arbitral tribunal considers that it may have to rely on written testimonial evidence, it may still decide to do so without hearing the witness, and thus without giving the other party a chance to test that testimony by way of cross-examination. *In such a case, the evidentiary weight of such testimony will presumably be assessed at the lower end.*

Pierre R. Heitzmann, *The 2017 ICC Expedited Rules: From Softball to Hardball?*, 34 J. INT'L ARB. 121, 135-37 (2017), Boykin Decl. Ex. 5 (emphases added).

In this case, the Arbitrator took none of these precautions. As Defendants have demonstrated, far from conducting a "very careful analysis of the entire case" record when he decided to cancel the hearing on April 2, 2020, the Arbitrator mistakenly reasoned that "[s]ince Claimant has presented no witnesses statements in its submissions of 16 December 2019 and 1 April 2020, there are no witnesses that have been presented by Claimant who could be called by Respondents for cross-examination." Montalvo Decl. Ex. 22, ¶ 18. ECF No. 95-22. In fact, Claimants had introduced the witness statement of Mr. Kazem on 16 December 2019 (Montalvo

Decl. Ex. 4, ECF No. 95-4) and two witness statements of Mr. Ahmadi on 16 December 2019 (*id.*) and 1 April 2020 (Montalvo Decl. Ex. 21, ECF No. 95-21), and Claimant had already designated Mr. Kazem for cross-examination on March 20, 2020 (Montalvo Decl. Ex. 14, ECF No. 95-14) and Prof. Duryea as a witness for Defendants.[2]  Rather than lowering the evidentiary weight afforded to the witness testimony, including especially the expert testimony on Afghan law that was never subject to cross-examination or rebuttal, the Arbitrator relied on Plaintiff's witness statements to resolve disputed issues against Defendants.  *See* Montalvo Decl. ¶¶ 59–67, ECF No. 95.  Most importantly, the Arbitrator's decision to cancel the hearing—without any alternative procedure—contradicted the rules he himself established for the Arbitration in Procedural Order No. 1 upon which the parties relied to present their cases.

It was in reliance on Procedural Order No. 1, which included an oral hearing and an opportunity to examine witnesses, that Defendants' counsel in the arbitration, Mr. Montalvo, made "decisions about how best to present Respondents' defense in the arbitration."  Montalvo Decl. ¶ 16, ECF No. 95.  As Mr. Montalvo, explained, "[t]hrough document disclosure process in the arbitration that took place in January and February of 2020 and through Freedom of Information Act requests, Respondents obtained documents that I intended to use to cross-examine Mr. Kazem."  *Id.* at ¶ 33.  Defendants' counsel described what he hoped to achieve through cross-examination of Mr. Kazem:  "[a]s the Claimant's director, he would provide testimony regarding Claimant's decision not to initiate arbitration in 2014…[that] would have been relevant to Respondents' affirmative defense that, as a matter of Afghan law, the four-year statute of limitations precluded Claimant's claim."  *Id.* at ¶ 34.  Moreover, "Mr. Kazem would

---

[2]   The final deadline for designating witness for cross-examination was April 3, 2020.  *See* Montalvo Decl. Ex. 9, ECF No. 95-9.

also have provided testimony regarding all aspects of the business interests and interactions that had a bearing on the proceedings and Respondents' defenses and counter-claims such as the claim for breach of contract … [f]or example, the purposes for which the loan proceeds could be used was a factual dispute between the parties that the Arbitrator ultimately resolved against Respondents on the basis of Mr. Kazem's written witness statement." *Id.* at ¶ 35.

Plaintiff's argument ignores the significance of Procedural Order No. 1, which established the procedures in the arbitration at its outset.  *See* Montalvo Decl. Ex. 3, ECF No. 95-3.  Plaintiff acts as if the Arbitrator were free to disregard the provisions of Procedural Order No. 1, upon which Defendants and their counsel had relied, without any consideration of the prejudice that might result from depriving Defendants of the benefit of those procedures.  The Expedited Procedure Rules certainly gave the Arbitrator the authority, at the outset of the arbitration, to decide the case without an oral hearing.  Indeed, in November 2019, prior to the issuance of Procedural Order No. 1, the parties to the arbitration disagreed about whether an oral hearing was necessary and made their respective arguments to the Arbitrator on that subject.  *See* Montalvo Decl. ¶ 11, ECF No. 95.  After considering the parties' respective positions, the Arbitrator exercised the discretion he had under the Expedited Procedure Rules in favor of holding a hearing and issued Procedural Order No. 1 with a timetable that provided for one.  *See id.* at ¶ 13.

Once the Arbitrator made that decision and allowed the parties to develop and present their cases in reliance on the provisions established in Procedural Order No. 1, the Arbitrator was not free to cancel the hearing and cease all further proceedings without considering the prejudice Defendants could suffer as a result.  There is no set of arbitral rules that gives an arbitrator carte

blanche to change the rules of the arbitration so as to deprive a party of a meaningful opportunity to present its case.  In doing so, the Arbitrator deprived Defendants of due process.

### B. Plaintiff misconstrues the record of the arbitration

Plaintiff either misunderstands or deliberately mischaracterizes Defendants' argument in their Opposition.  *See* Pl.'s Opp'n to Mot. to Vacate Award, ECF No. 101.  As previously explained, the Arbitrator's decision not to hear evidence from Defendants on their dispositive statute of limitations defense deprived Defendants of a meaningful opportunity to be heard.  *See* Defs.' Mem. Supp. Mot. to Vacate Award 13–15, ECF No. 98.  In their Opposition, Plaintiff describes Defendants' evidence as "untimely, incorrect, unpermitted-rebuttal testimony regarding a waived defense."  Pl.'s Opp'n to Mot. to Vacate Award 3, ECF No. 101.  None of those adjectives is accurate.

### 1.  Defendants statute of limitations defense was neither untimely nor unpermitted

Plaintiff's contention that the statute of limitations defense was "unpermitted" ignores the record.  The Arbitrator specifically permitted briefing on the statute of limitations when he wrote that "although these issues have been raised late and not in accordance with the procedural schedule, the Tribunal hereby requests that the Claimant respond to these issues in its next submission."  Montalvo Decl. Ex. 7, ECF No. 95-7.  On April 1, 2020, as part of its next written submission, Plaintiff submitted the witness second witness statement of Mr. Ahmadi.  *See* Montalvo Decl. Ex. 21, ECF No. 95-21.  Under the procedural rules established at the outset of the arbitration, Defendants had the right to cross-examine Mr. Ahmadi about the contents of his second witness statement and to challenge his testimony with rebuttal evidence from Defendant's

own expert.³  *See* Montalvo Decl. Ex. 3, ¶ 8.10 (cross-examination); ¶ 8.15 (direct examination to respond to new facts) ECF No. 95-3.

The Arbitrator's sudden decision to cancel the hearing—without providing any alternative means for Defendants to challenge Mr. Ahmadi's evidence in his second witness statement—deprived Defendants of due process.  The Arbitrator had several options available to him short of cancelling the hearing and deciding the case on the record as it then stood.  The Arbitrator could have either (i) provided for an in-person hearing at a later date once the spread of COVID-19 was brought under control; (ii) provided for a hearing by video-conference on the days already reserved for hearings (April 12-13, 2020) (*see* Montalvo Decl. Ex. 9, ECF No. 95-9; Montalvo Decl. Ex. 12, ECF No. 95-12); or (iii) provided Defendants an opportunity to respond in writing to Mr. Ahmadi's second witness statement.  Any one of these steps would have been less prejudicial to Defendants than cancelling the hearing and discontinuing further proceedings.

Plaintiff argues that Defendants agreed that the Arbitrator could resolve the res judicata and statute of limitations questions via briefing and that Defendants now ask this Court to ignore their own words.  *See* Pl.'s Opp'n to Mot. to Vacate Award 5, ECF No. 101.  Plaintiff overstates what Defendants' counsel in the arbitration wrote in his email.  Mr. Montalvo wrote that the statute of limitations issue could be resolved "via briefing."  Montalvo Decl. Ex. 19, ECF No. 95-19.  He did not say that it could be decided on the written record as it stood when he wrote his email on March 27, 2020.  When he sent his email, Plaintiff had not yet introduced Mr.

---

³   The procedural rules of the arbitration called for simultaneous written submissions from the parties on April 1, 2020.  *See* Montalvo Decl. Ex. 3, ECF No. 95-3; Montalvo Decl. Ex. 13, ECF No. 95-13.  On that day, Plaintiff submitted Mr. Ahmadi's second report.  *See* Montalvo Decl. Ex. 21, ECF No. 95-21.  Defendants could not have had Prof. Duryea address the misleading contents of Mr. Ahmadi's second report in their submission on April 1, 2020, because they had not yet received it.  The only opportunities Defendants had to challenge Mr. Ahmadi's testimony was through cross-examination at the hearing and through direct testimony from Prof. Duryea at the hearing.  The Arbitrator's decision to cancel the hearing without any additional process deprived Defendants of both opportunities.

Ahmadi's second witness statement into evidence, and Mr. Montalvo was not in a position to waive Defendants' rights to cross-examine Mr. Ahmadi and to rebut Mr. Ahmadi's evidence with direct testimony from Prof. Duryea either at a hearing or by submitting a written statement from her.  In any event, Mr. Montalvo was clear that he did not "concur that the case can be concluded conclusively through the pleadings[.]"  *Id.*  But that is what the Arbitrator did.

After depriving Defendants of any opportunity to challenge Mr. Ahmadi's testimony in his second witness statement and depriving Defendants of an opportunity to cross-examine Mr. Kazem, the Arbitrator proceeded to rely upon the written witness statements of both witnesses to resolve contested issues, including rejecting Defendants' defense that the statute of limitations barred Plaintiff's claim (*see* Montalvo Decl. ¶¶ 60–67, ECF No. 95) and the factual dispute about the purposes for which the loan proceeds could be used.  *See* Montalvo Decl. ¶¶ 35, 59, ECF No. 95.  Those deprivations are the gravamen of Defendants' due process challenge.

Courts have regularly held that such a sudden deprivation of a party's procedural rights, without any thoughtful attempt by the Arbitrator to protect that party's due process rights with reasonable alternative procedures, warrants vacatur.  *See e.g., Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 17-19 (2d Cir. 1997) (vacating award based on a tribunal's refusal to postpone the hearing to allow for testimony of a key witness); *Hall v. Eastern Airlines*, 511 F.2d 663, 664 (5th Cir. 1975) (declining to recognize award after the tribunal refused to consider party's alibi defense as untimely, and finding that "[t]he presentation of one's defense is a basic due process right").

In his Award, the Arbitrator himself was highly critical of Plaintiff for waiting more than four years to commence arbitration after this Court ordered the Parties to arbitrate in 2014.  *See*

Montalvo Decl. Ex. 23 ¶¶ 142–153, ECF No. 95-23.[4]  If the Arbitrator had provided Defendants with some process through which to challenge the contents of Mr. Ahmadi's misleading second witness statement, the Arbitrator might not have relied on it to reject Defendants' statute of limitations defense and Defendants might have prevailed on this defense.  Instead, the Arbitrator relied on the unrebutted testimony in Mr. Ahmadi's second witness statement to reject Defendants' defense.[5]  Similarly, the Arbitrator relied on Mr. Kazem's untested testimony to resolve against Defendants the factual dispute between the parties about whether the loan was tied to the parties' project.  *See* Montalvo Decl. at ¶ 59, ECF No. 95 (citing Montalvo Decl. Ex. 23 ¶ 133, ECF No. 95-23).

### 2. Defendants never waived their statute of limitations defense

As discussed in the Vacatur Memorandum, Defendants never waived their right to object to the cancellation of the hearing or to correct the record regarding misstatements of Afghan law introduced into evidence by Plaintiff.  *See* Defs.' Mem. Supp. Mot. to Vacate Award 16–17, ECF No. 98.  Plaintiff's Opposition does not respond to Defendants' arguments.  The record in the arbitration shows how Mr. Montalvo repeatedly objected to the course of action taken by the Arbitrator in Procedural Order No. 4.  *See id.*  Plaintiff offers no reason why anyone could have thought the Arbitrator might be open to proceeding otherwise than how he decided.  Indeed, the

---

[4] During those four years, Plaintiff elected to pursue its claim against RANA Technologies Enterprises in the Afghan courts in violation of its agreement to arbitrate disputes with RANA.  *See* Montalvo Decl. Ex. 23 ¶ 151, ECF No. 95-23.  Plaintiff waited more than four years to start the arbitration against the Defendants.  *See id.* at ¶ 151–152.

[5] However, even if the Arbitrator had not permitted Defendants to raise the statute of limitations defense, vacatur would still be warranted because the statute of limitations issue here is a complete defense.  The right to raise such a defense constitutes "a basic due process right" and an arbitral award is rendered unenforceable when an arbitrator denies a party an opportunity to present such a defense.  *Hall v. Eastern Airlines*, 511 F.2d 663, 664 (5th Cir. 1975) (affirming district court's refusal to recognize award after the tribunal refused to consider party's alibi defense as untimely and finding that "[t]he presentation of one's defense is a basic due process right.")

Arbitrator was clear in his Award that he would not have reconsidered his decision even if he had been asked to do so. He wrote: "[i]f Respondents had made such a request [to examine Claimant's witnesses], the Tribunal would have in any event maintained its order as it would have decided that the most efficient and effective manner to complete the arbitration based on the record before it was to decide the case on the written record and that an oral hearing was unnecessary." Montalvo Decl. Ex. 23 n. 9, ECF No. 95-23.

### 3. Plaintiff mischaracterizes Defendants' defense as frivolous

Plaintiff alternatively characterizes the statute of limitations challenge as "incorrect," "frivolous," and inconsequential. *See* Pl.'s Opp'n to Mot. to Vacate Award 13–16, ECF No. 101. Plaintiff once again ignores the record in the arbitration. The statute of limitations defense was a serious defense that the Arbitrator expressly asked the parties to brief. *See* Montalvo Decl. Ex. 7, ECF No. 95-7. In his Award, the Arbitrator repeatedly relied upon the second witness statement of Mr. Ahmadi to reject that defense. *See* Montalvo Decl. Ex. 23 ¶¶ 74–77, 105–107, ECF No. 95-23. Prof. Duryea's declaration demonstrated how Mr. Ahmadi's report was misleading in several material respects, including his testimony that the statute of limitations was "terminated" once Plaintiff commenced its action before this Court in 2014, and his testimony concerning when an objection based on the statute of limitations must be raised. *See* Duryea Decl. ¶¶ 11–19, ECF No. 99. As Prof. Duryea demonstrated, the statute of limitations either was tolled or it was reset when Plaintiff commenced its action before this Court. *See id.*; *see also* Defs.' Mem. Supp. Mot. to Vacate Award 9–10, ECF No. 98. Either way, the limitations period was not *terminated*, and by the time Plaintiff commenced the arbitration, more than four years had elapsed and it had expired. In addition, Prof. Duryea showed that Mr. Ahmadi's report was misleading when he

wrote that the statute of limitations defense must be raised prior to the commencement of the proceedings.  *Id*. at ¶ 18.

Plaintiff spends much of its opposition attacking Prof. Duryea's impressive credentials rather than engaging in the substance of her testimony, simply dismissing her interpretation as "defy[ing] common sense."  Pl.'s Opp'n to Mot. to Vacate Award 15, ECF No. 101.  It hardly would "defy common sense" to conclude that a party that waits more than four years to commence a proceeding after a court order to do so is barred from recovery by a four-year statute of limitations.  Although Prof. Duryea's expert opinion on Afghan law is more persuasive than Mr. Ahmadi's second witness statement, this Court need not decide who is right.  That was the Arbitrator's job and he failed to do it when he deprived Defendants of the opportunity to respond to the contents of Mr. Ahmadi's second report and then relied on the contents of that report to reject Defendants' defense.

The issue before this Court is whether the Arbitrator violated Defendants' due process rights when he denied the Defendants any opportunity to challenge the contents of Mr. Ahmadi's second witness statement and failed to provide Defendants an opportunity to cross-examine Plaintiff's sole fact witness Mr. Kazem.  Under the governing procedural order, Defendants had the right to challenge Mr. Ahmadi about the contents of his second witness statement either through cross-examination or through direct evidence from Prof. Duryea.  *See* Montalvo Decl. Ex. 3, ¶¶ 8.10, 8.15, ECF No. 95-3.  The Arbitrator deprived Defendants of those procedural rights when he suddenly cancelled the hearing on April 2, 2020—the morning after receiving Mr. Ahmadi's second report—without providing for any alternative procedures that were readily available to him so as to ensure that Defendants had an opportunity to challenge Mr. Ahmadi's

evidence or to cross-examine Mr. Kazem. *See* Defs.' Mem. Supp. Mot. to Vacate Award 13–15 ECF No. 98; Montalvo Decl. Ex. 22, ECF No. 95-22.

In Procedural Order No. 4, the Arbitrator attempted to justify his extreme decision not to hold a hearing or to provide any substitute for a hearing on the mistaken grounds that "Claimant has presented no witness statements in its submissions of 16 December 2019 and 1 April 2020." Montalvo Decl. Ex. 22 ¶ 18, ECF No. 95-22. That was, of course, wrong. Plaintiff had introduced statements from two witnesses, including a second witness statement from Mr. Ahmadi only one day prior to the decision to cancel the hearing. *See* Montalvo Decl. Ex. 21, ECF No. 95-21. In footnote 9 of his Final Award, the Arbitrator tried to explain away the significance of the mistake he made when he wrote Procedural Order No. 4 and overlooked how Plaintiff had introduced three witness statements from two witnesses in support of its case, one of whom (Mr. Kazem) Defendants' counsel had designated for cross-examination on March 20, 2020.

Compounding his initial error, the Arbitrator's apologia in footnote nine of the Award itself misstates the procedural record in the arbitration. *See* Montalvo Decl. Ex. 23 n. 9, ECF No. 95-23. Contrary to the Arbitrator's contention, Defendants had designated Plaintiff's director and sole fact witness, Mr. Mustafa Kazem, for cross-examination on March 20, 2020, and they had also designated Prof. Duryea as a witness for Defendants. *See* Montalvo Decl. Ex. 14 ¶ 4, ECF No. 95-14. In his declaration, Mr. Montalvo explained what he hoped to establish through cross-examination of Mr. Kazem. *See* Montalvo Decl. ¶ 34–35, 59, ECF No. 95. The evidence Prof. Duryea would have given in response to Mr. Ahmadi's second report is before this Court. *See* Duryea Decl., ECF No. 99. Defendants never had either opportunity in the arbitration. The Arbitrator's denial of any opportunity for Defendants to cross-examine Mr. Kazem denied

Defendants' due process and, is by itself, sufficient grounds to vacate the Award. *See, e.g., Generica Ltd. v. Pharmaceutical Basics, Inc. (PBI),* 125 F.3d 1123, 1127 (7th Cir. 1997) (finding that an arbitral tribunal provided due process after cancelling cross examination because the tribunal established substitute procedures for testing evidence, including additional rebuttal expert testimony).

Notwithstanding the Arbitrator's *ex post* rationalization in footnote nine of the Award, the significance of the Arbitrator's mistake is undeniable. The Arbitrator twice relied on Mr. Ahmadi's second report in his Final Award when dismissing the Defendants' statute of limitations defense, and he relied on Mr. Kazem's witness statement to resolve a factual dispute in Plaintiff's favor. *See* Montalvo Decl. Ex. 23 ¶¶ 74–77, 105–107, 133, ECF No. 95-23. The Arbitrator deprived Defendants of these important procedural rights, established at the outset of the arbitration, and in so doing denied Defendants due process such that Defendants were "unable to present [their] case." New York Convention Art. V(1)(d), 21 U.S.T. 2517, 330 U.N.T.S. 28.

### III.  CONCLUSION

Plaintiff's Opposition is replete with ad hominem attacks on the Defendants and their motives in challenge the Award. Defendants will not respond to Plaintiff's insinuations here other than to deny them categorically. Such aspersions are not relevant to the only issue currently before the Court: whether the Arbitrator denied due process to Defendants such that the Court should vacate the Award. The answer to that question is "yes." This case is the rare example of a breakdown in the arbitral process that prevented one party from fully presenting its case in a manner severe enough to constitute a due process violation.

Undoubtedly, the exigent circumstances of the emerging COVID-19 pandemic influenced the Arbitrator's decision in Procedural Order No. 4 to cancel the hearing and decide the case on the record as it stood on April 2, 2020.  This Court and others provided extensions and rescheduled hearings due to the pandemic.  The global pandemic presented a unique set of procedural hazards that no arbitrator or judge will want to relive.  As unprecedented as the circumstances may have been, they do not justify denying Defendants due process and the opportunity to present their case.  It is only when there has been due process, and when both parties have had an opportunity to fully present their case, that an arbitral award earns the deference of this Court.  Due process was lacking in this case.  As a result, Defendants respectfully request that this Court vacate the Award.

## RELIEF REQUESTED

For the reasons stated herein, Defendants respectfully request that the Court, by its authority under 9 U.S.C. § 10(a)(3), 9 U.S.C. § 207 and Article V(1)(b) of the New York Convention, enter an Order vacating the Final Award.

Dated:  October 14, 2020

                                                                        Respectfully submitted,

/s/ James H. Boykin
James H. Boykin (VSB# 67980)
Alexander S. Bedrosyan
Carter Rosekrans
Hughes Hubbard & Reed LLP
1775 I Street N.W., Suite 600
Washington D.C.  20006
Tel:  (202) 721-4751
Fax:  (202) 721-4646
james.boykin@hugheshubbard.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record who are registered with CM/ECF. There are no *pro se* parties in this matter.

_____
James H. Boykin (VSB# 67980)
Hughes Hubbard & Reed LLP
1775 I Street N.W., Suite 600
Washington D.C. 20006
Tel: (202) 721-4751
Fax: (202) 721-4646
james.boykin@hugheshubbard.com